1
2
3
4
5

Gary G. Kreep (California Bar No. 066482)
Attorney at Law
932 D Street, Suite 1
Ramona, CA 92065
Phone: 760-803-4029
gary@ggkmail.us

6

Attorney for Plaintiffs

7

8

9   **UNITED STATES DISTRICT COURT**
    **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CORAZON DE CRISTO CANO, *et al.*,

12

13                    *Plaintiffs,*

14   v.

15   JOSEPH R. BIDEN, in his official
     capacity as President of the United
16   States, *et al.*,

17

                     *Defendants.*

18

---

**Case No.:** 3:22-cv-00193-CAB-AHG

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Date:
Time:
Courtroom: 15A
Location: 333 West Broadway, San Diego, CA 92101
Judge: Honorable Cathy Bencivengo
Action Filed: February 10, 2022

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

URGENCIES JUSTIFYING RELIEF ................................................ 1

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................ 2

    A.    Federal Employee Mandate ................................................ 2

    B.    Federal Contractor Mandate .............................................. 4

    C.    Postal Service Dependence on the U.S. Treasury ............... 6

LEGAL ARGUMENT ..................................................................... 7

    A.    Legal Standard for Temporary Restraining Order ............. 7

    B.    Plaintiffs Are Likely To Succeed on the Merits. ............... 7

        1.    The Employee Definition is Unconstitutional .................. 7

    C.    Plaintiffs Are Likely to Suffer Irreparable Harm in the
        Absence of Preliminary Relief. .......................................... 9

    D.    In the Balance of Equities, Preliminary Relief Will Not
        Impose an Undue Burden on the Federal Government. ..... 10

    E.    Preliminary Relief Advances the Public Interest. ............. 11

    F.    This Court Should Issue An Order to Show Cause. .......... 11

CONCLUSION .............................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................ 11

*Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ................... 9

*Back v. Carter*, 933 F. Supp. 738 (N.D. Ind. 1996) ............................................. 10

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ................................................................ 7

*BST Holdings, LLC v. Occupational Safety and Health Administration*, 17 F.4th 604 (5th Cir. 2021) ........................................................ 5

*Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ........................................................................................................ 9

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ........................................ 8

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) ..................... 8

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ........................ 10

*Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591 (2008) .................................... 8

*Feds for Medical Freedom v. Biden*, No. 3:21-cv-356, 2022 WL 188329 (S.D. Texas, January 21, 2022) ................................................................. 3

*Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021) ........................................................................................................ 6

*Hoffman v. Int'l Longshoremen's & Warehousemen's Union, Local No. 10*, 492 F.2d 929 (9th Cir. 1974) ................................................................. 7

*In re MCP NO. 165*, 21 F.4th 357 (6th Cir. 2021) ................................................. 5

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197 (9th Cir. 1980) ........................................................................................ 10

*Leeper v. Beltrami*, 53 Cal. 2d 195 (1959) ........................................................... 9

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) ................................. 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................................... 11

*Muniz v. Hoffman*, 422 U.S. 454 (1975)................................................................7

*NASA v. Nelson*, 562 U.S. 134 (2011) .............................................................9

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. ____, 142 S.Ct. 661 (2022) (per curiam) ...................5

*Nelson v. NASA*, 530 F.3d 865 (9th Cir. 2008)..........................................9

*Nken v. Holder*, 556 U.S. 418 (2009) ...........................................................10

*Plyler v. Doe*, 457 U.S. 202 (1982) ...............................................................8

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) .........................7

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991).........................................................................9

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ____, 14 S.Ct. 63 (2020)(per curiam) ..............................................................11

*Rosebud Sioux Tribe v. Trump*, 495 F. Supp.3d 968 (D. Mont. 2020) ...............10

*Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017) ........................................8

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp.3d 839 (D. Or. 2021) ...............................................................................7

*United States v. Carolene Products Co.*, 304 U.S. 144 (1938)............................9

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ................................................7

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ...............................................9

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................7, 10

**Statutes**

18 U.S.C. §§ 602, 603, 607 ................................................................................3

39 U.S.C. §§ 3202, 3206, 3214 and 3216.........................................................4

5 U.S.C. § 2105...................................................................................................3

5 U.S.C. § 7322 ..................................................................................................3

CARES Act (H.R. 748), Public Law No: 116-136, § 801, 134 Stat.

504-505 ...................................................................................................... 6

Consolidated Appropriations Act, 2021 (H.R. 133), Public Law No:
  116-260, § 6001, 134 Stat. 2119 ...................................................... 6

**Rules**

Federal Rule of Civil Procedure 65(a) ...................................................... 7

**Constitutional Provisions**

Fifth Amendment .............................................................................. 7, 8, 9

Fourteenth Amendment ...................................................................... 7, 8

**Regulations**

5 C.F.R § 531.203 ...................................................................................... 3

87 Fed. Reg. 3928, "COVID-19 Vaccination and Testing;
  Emergency Temporary Standard" (January 26, 2022) ....................... 5

**Orders**

Exec. Order No. 14042, 86 Fed. Reg. 50,985, "Ensuring Adequate
  COVID Safety Protocols for Federal Contractors" (Sept. 9, 2021) .... 4

Exec. Order No. 14043, 86 Fed. Reg. 50,989, "Requiring
  Coronavirus Disease 2019 Vaccination for Federal Employees"
  (Sept. 9, 2021) ............................................................................... 2, 3

**Other Authorities**

2020 U.S. Postal Service Election Mail Fact Sheet ............................... 6

1

## URGENCIES JUSTIFYING RELIEF

2
3
4

Plaintiffs need immediate relief from Defendants' Federal Worker Covid-19 vaccine mandate because Plaintiffs face the unconstitutional choice of receiving an unwanted vaccine by injection, or else forfeiting their livelihood.

5
6
7

They are subject to discipline including termination.  If not preliminarily enjoined, Defendants ("Federal Government") intend to irreversibly place the plaintiffs at risk of irreparable harm.

8

## INTRODUCTION

9
10
11
12
13
14

Plaintiffs, Federal employees, and employees of Federal contractors (collectively "Federal Workers"), seek a temporary restraining order ("TRO") and preliminary injunction against two unprecedented vaccination mandates. Those mandates—one relating to federal contractors and subcontractors ("Contractor Mandate" and another related to "all" federal employees ("Employee Mandate")—transgress Plaintiffs' constitutional protections.

15
16
17
18

The United States Postal Service is an independent establishment of the executive branch of the Government of the United States, and the employees of the United States Postal Service ("Postal Service Employees") are employees of the Federal Government.

19
20
21
22
23
24
25

Federal Workers are similarly situated with Postal Service Employees. Federal Worker provide civil service or contract service for the Federal Government.  Similarly, Postal Service Employees provide services for the Federal Government.  However, Federal Workers are required to be fully vaccinated or risk termination, while Postal Service Employees are not required to be fully vaccinated and may continue employment without any risk of termination.

26
27
28

The Defendants have not given a reason for the disparate treatment between Plaintiffs and the Postal Service Employee, and there is no rational basis for the disparate treatment.  Therefore, Plaintiffs' equal protection rights have

1   been violated.

2      It is upon such a clear, focused, violation of constitutional equal protection

3   rights that this TRO application is respectfully submitted to this Court.  A

4   temporary restraining order is necessary to prevent Defendants from enforcing

5   the Employee Mandate and Contractor Mandate unnecessarily forcing unwanted

6   Covid-19 vaccination upon Federal Workers, otherwise at risk of the termination

7   of employment.  While the Employee Mandate and the Contractor Mandate are

8   currently enjoined, those injunctions were issued based on different grounds, and

9   may be lifted at any moment.

10     This Court must protect the status quo: continued employment without

11  vaccination, and without punishment.

12                           **BACKGROUND**

13     On September 9, 2021, President Biden gave remarks at the White House

14  announcing plans for COVID-19 vaccination mandates for federal workers and

15  certain businesses, including healthcare facilities receiving federal funding, and

16  all businesses with more than 99 employees. In that announcement, President

17  Biden announced several categories of vaccination requirements, including those

18  for (1) federal employees, (2) federal contractors and their employees, (3)

19  employers with 100 or more employees, and (4) health care providers. This suit

20  challenges the first and second mandates.

21     **A.    Federal Employee Mandate**

22     On September 9, 2021, President Biden signed Executive Order ("EO")

23  14043, which required that "[e]ach agency shall implement . . . a program to

24  require COVID-19 vaccination for all of its Federal employees." The EO also

25  required the Safer Federal Workforce Task Force ("SFWTF") to issue guidance

26  for agencies by September 16, 2021.  EO 14043, 86 Fed. Reg. 50,989,

27  "Requiring Coronavirus Disease 2019 Vaccination for Federal Employees"

28  (Sept. 9, 2021)

EO 14043 defines the term ''employee'' to mean "an employee as defined in 5 U.S.C. 2105 (including an employee paid from non-appropriated funds as referenced in 5 U.S.C. 2105(c))." 86 Fed. Reg. at 50990, Sec. 3(b) . The statute 5 U.S.C. § 2105 excludes certain individuals from the definition of employee including: 1. An individual employed at the U.S. Naval Academy in certain positions whose employment began before October 1, 1996 (5 U.S.C. § 2105(b)); 2. An employee paid from non-appropriated funds for certain instrumentalities under the jurisdiction of the armed forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel (5 U.S.C. § 2105(c)); 3. An employee of the Postal Service or of the Postal Regulatory Commission (5 U.S.C. § 2105(e)). The Executive Order explicitly and purposely changes the definition of employee as defined in 5 U.S.C. § 2105 to include an employee paid from non-appropriated funds, but failed to include a Postal Service Employee in the definition. The Executive Order provides no explanation or reason for including an employee paid from non-appropriated funds, or for excluding a Postal Service Employee from the definition of employee.

The Federal Government uses numerous definitions for defining a federal employee. A Postal Service Employee is included in the definition of employee subject to the Hatch Act. See, 5 U.S.C. § 7322, and 18 U.S.C. §§ 602, 603, 607. Another definition defines "employee" to mean an employee as defined in 5 U.S.C. § 2105, and an "individual employed by the U.S. Postal Service or the Postal Rate Commission who would be considered an employee under 5 U.S.C. 2105 but for the exclusion in section 2105(e)." See, 5 C.F.R § 531.203.

Enforcement of the Federal Employee Mandate (EO 14043) was enjoined nationwide in *Feds for Medical Freedom v. Biden*, No. 3:21-cv-356, 2022 WL 188329, at *1 (S.D. Texas, January 21, 2022). An appeal has been filed with the Fifth Circuit Court of Appeals, and the injunction may be set aside at any time by

the appeals court.

**B. Federal Contractor Mandate**

Also, on September 9, 2021, President Biden signed EO 14042, imposing on federal contractors "COVID [s]afety [p]rotocols" to be established and issued by the SFWTF") by September 24, 2021.  EO 14042, 86 Fed. Reg. 50,985, "Ensuring Adequate COVID Safety Protocols for Federal Contractors" (Sept. 9, 2021).  On September 24, 2021, the SFWTF released on its website guidance to federal agencies for implementing Defendants' vaccine mandate on contractors and subcontractors (the "Contractor Mandate"), entitled "COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors."[1] This guidance was never published to the Federal Register for public comment. A true and correct copy of this guidance is attached as **Exhibit 1** hereto and made a part hereof. Among other things, the guidance included a deadline of December 8, 2021, for "covered contractor employees" to be fully vaccinated.

The Postal Service is also not covered by the Contractor Mandate.  This is astonishing giving the type and level of services exclusively provided by the Postal Service to the Federal Government.  The Postal Service provides franked mail and penalty mail service (penalty mail is official mail, other than franked mail, which is authorized by law to be transmitted in the mail without prepayment of postage) with reimbursement.  See, 39 U.S.C. §§ 3202, 3206, 3214 and 3216.

On November 5, 2021, OSHA published an emergency temporary standard (ETS) of vaccine or testing regulations for employers with 100 or more employees, with a compliance deadline of January 4, 2021.  86 Fed. Reg. 61402. The mandatory vaccination deadline for "covered contractor employees" to be fully vaccinated was extended to January 4, 2021, to coincide with an OSHA

---

[1] Guidance for Federal Contractors and Subcontractors (saferfederalworkforce.gov) : https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf

1    deadline for compliance with the newly published vaccine or testing regulations.

2        At the outset, the OSHA mandate was enjoined by the Fifth Circuit Court

3    of Appeals, wherein OSHA was ordered to "take no steps to implement or

4    enforce the Mandate until further court order." *BST Holdings, LLC v.*

5    *Occupational Safety and Health Administration*, 17 F.4th 604, 619 (5th Cir.

6    2021).  However, on December 17, 2021, the Sixth Circuit Court of Appeals

7    dissolved the stay issued by the Fifth Circuit. *In re MCP NO. 165*, 21 F.4th 357,

8    366 (6th Cir. 2021).

9        On January 4, 2022, the United States Postal Service sent a letter to OSHA

10   requesting a temporary variance to the OSHA ETS.  In the letter the Postal

11   Service acknowledged, "[u]nlike private employers, as a federal entity, the Postal

12   Service is covered by privacy, security, and recordkeeping obligations, such as

13   the Privacy Act and the Freedom of Information Act (FOIA)."  Request for

14   Temporary Variance and Interim Order, USPS, page 6 (January 4, 2022).[2]  A

15   true and correct copy of this letter is attached as **Exhibit 2** hereto and made a part

16   hereof.

17       On January 13, 2022, the Supreme Court disagreed with the Sixth Circuit's

18   conclusion to dissolve the stay and issued a stay of OSHA's COVID-19

19   Vaccination and Testing; Emergency Temporary Standard. *Nat'l Fed'n of Indep.*

20   *Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. ____, 142

21   S.Ct. 661, 663 and 664 (2022) (per curiam).  On January 26, 2022, the

22   Department of Labor withdrew the Emergency Temporary Standard, but

23   maintained it as a proposed regulation. 87 Fed. Reg. 3928, "COVID-19

24   Vaccination and Testing; Emergency Temporary Standard" (January 26, 2022).

25       Thus, Postal Service Employees currently are not even subject to the

26   OSHA vaccine or testing regulations published on November 5, 2021.

27

28   ---
     [2] request-for-variance-and-internal-order-010422-v2.pdf (usps.gov) ; https://liteblue.usps.gov/lite-blue/covid19/pdf/request-for-variance-and-internal-order-010422-v2.pdf

1    Enforcement of the Federal Contractor Mandate (EO 14042) was enjoined

2    nationwide in *Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939 (S.D. Ga.

3    Dec. 7, 2021).  An appeal has been filed with the Eleventh Circuit Court of

4    Appeals, and the injunction may be set aside at any time by the appeals court.

5    **C. Postal Service Dependence on the U.S. Treasury**

6    As a result of the pandemic, the Postal Service has been dependent on

7    substantial assistance from the U.S. Treasury.  Congress approved a $10 billion

8    loan for the Postal Service under the Coronavirus Aid, Relief, and Economic

9    Security Act ("CARES Act") (H.R. 748) signed into law on March 27, 2020.

10   *See*, Public Law No: 116-136, § 801, 134 Stat. 504-505.  The $10 billion was

11   converted into direct aid to the Postal Service, without requiring repayment, by

12   the Consolidated Appropriations Act, 2021 (H.R. 133) signed into law on

13   December 27, 2021.  *See*, Public Law No: 116-260, § 6001, 134 Stat. 2119.

14   In response to widely circulated concerns about delivery of ballots through

15   the mail, the Postal Service issued a 2020 U.S. Postal Service Election Mail Fact

16   Sheet[3].  A true and correct copy of this mail fact sheet is attached as **Exhibit 3**

17   hereto and made a part hereof. Under the heading, USPS's Ability to Handle the

18   Surge in Mail-in Ballot Deliveries, is the following statement, "The Postal

19   Service is fully committed and actively working to handle the anticipated

20   increase in Election Mail volume over the coming weeks.  The Postal Service,

21   our unions and the more than 630,000 postal employees are united in delivering

22   on this sacred duty."  Thus, during the 2020 election, which resulted in election

23   of the current administration, the 630,000 Postal Service Employees were

24   actively working on the sacred duty of handling election mail and the Postal

25   Service was also receiving substantial financial assistance from the U.S.

26   Treasury.

27

28   [3] 2020 U.S. Postal Service Election Mail Fact Sheet - Newsroom - About.usps.com ;
     https://about.usps.com/newsroom/statements/1021-usps-election-mail-fact-sheet.htm

| | |
|---|---|
| 1 | **LEGAL ARGUMENT** |
| 2 | **A. Legal Standard for Temporary Restraining Order** |
| 3 | Plaintiffs seek a preliminary injunction under Federal Rule of Civil |
| 4 | Procedure ("FRCP") 65(a) for the purpose of "preserv[ing] the relative positions |
| 5 | of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, |
| 6 | 451 U.S. 390, 395 (1981). As the moving party, plaintiff can obtain a preliminary |
| 7 | injunction by showing that they are likely to succeed on the merits, they will |
| 8 | suffer irreparable harm absent injunctive relief, the balance of the equities tips in |
| 9 | their favor, and the public interest favors injunctive relief. *Pom Wonderful LLC* |
| 10 | *v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Natural Res.* |
| 11 | *Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Here, all four conditions are met, and |
| 12 | support the preliminary relief requested by Federal Workers.[4] |
| 13 | **B. Plaintiffs Are Likely To Succeed on the Merits.** |
| 14 | **1.  The Employee Definition is Unconstitutional** |
| 15 | Defendants' Employee Mandate, and Contractor Mandate as well, would |
| 16 | require vaccination of Federal Workers and employees of Federal Contractors, |
| 17 | but not of Postal Service Employees. This violates the Equal Protection Clause |
| 18 | because it confers preferential treatment upon Postal Service Employees as a |
| 19 | favored class without a valid basis to do so. |
| 20 | The Supreme Court established in *Bolling v. Sharpe*, 347 U.S. 497, 498-99 |
| 21 | (1954) that the Equal Protection Clause of the Fourteenth Amendment is |
| 22 | incorporated against the federal government through the Fifth Amendment's Due |
| 23 | Process Clause. *See also*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 |

---

[4] "In deciding whether to grant a motion for temporary restraining order (TRO), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction." *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp.3d 839, 844 (D. Or. 2021). TROs "preserve the status quo pending a hearing. . . ." *Hoffman v. Int'l Longshoremen's & Warehousemen's Union, Local No. 10*, 492 F.2d 929, 933 (9th Cir. 1974), *aff'd sub nom. Muniz v. Hoffman*, 422 U.S. 454 (1975).

(2017) (the Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment").

The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985), citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Absent the involvement of a suspect class or fundamental right, the test for equal protection is: does the government has a rational basis for treating a plaintiff (or group of persons) differently than others similarly situated. *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 602 (2008).

Ignoring for the moment the fundamental rights associated with unwanted medical treatment and with bodily integrity, the Employee Mandate and Contractor Mandate fail to satisfy the Equal Protection guarantees of the U.S. Constitution under the rational basis standard. The Federal Government failed to even attempt to provide a basis for the favorable treatment of Postal Service Employees over the other Federal Workers. Thus, the Court is left without evidence to justify the government's interest in favoring the Postal Service Employees.

Without overly speculating, it must be noted that Postal Service Employees were integral in the delivery of mail-in ballots, and the operations at the Postal Service operations were widely discussed during the 2020 election. That allows a basis for concern that impermissible political patronage may have been a factor for the favorable treatment of the Postal Service Employees.

The United States has had a long tradition of Constitutional protection of an individual's bodily integrity, and protection of an individual's right to refuse unwanted medical treatments. See, e.g., *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990), "[T]he right to refuse unwanted medical treatment was so rooted in our history, tradition, and practice as to require special

protection . . . ."  *Washington v. Glucksberg*, 521 U.S. 702, 722 n.17 (1997).

Thus, the disparate treatment merits heightened scrutiny.  *See, e.g.*, *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4 (1938) (Narrower scope of presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments.)

Further, the threat of loss of employment (discipline) is "duress"[5], and this Court should apply strict scrutiny to the Employee Mandate and the Contractor Mandate, with respect to the favorable treatment of Postal Service Employees over other similarly situated Federal Workers and employees of Federal Contractors.

### C. Plaintiffs Are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.

"[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008) , reversed on other grounds, *NASA v. Nelson*, 562 U.S. 134 (2011) .[6]   Equal Protection rights are so fundamental to our society that any violation of those rights causes irreparable harm.  *Back v. Carter*, 933 F.

---

[5] *Leeper v. Beltrami*, 53 Cal. 2d 195, 203 (1959) ("Under modern law duress is not limited to threats against the person. It may also consist of threats to business or property interests.")

[6] Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. See *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Because intangible injuries generally lack an adequate legal remedy, "intangible injuries [may] qualify as irreparable harm." *Id. Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Moreover, to support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough. Rather, "a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

1    Supp. 738, 754 (N.D. Ind. 1996).

2         The unequal treatment between Postal Service Employees and the other

3    Federal Workers is irreparable harm.  The discipline being enforced against

4    Federal workers, leading to loss of employment (termination, forced resignation,

5    being laid off without pay, and/or forced retirement) based on the unequal

6    treatment, is irreparable harm.

7    **D. In the Balance of Equities, Preliminary Relief Will Not Impose an**

8    **Undue Burden on the Federal Government.**

9         The Federal Government will continue to operate as it has been, as will the

10   Postal Service.  The Federal Government does not point to any efficiencies in

11   operation that cannot be accommodated as they are currently being

12   accommodated.  That the President is losing patience, or that the worldwide

13   pandemic is still occurring, are not undue burdens on the Federal Government

14   caused by the Plaintiffs.

15        To qualify for injunctive relief, Petitioners must establish that "the balance

16   of equities tips in [their] favor." *Winter*, *supra,* 555 U.S. at 20. In assessing

17   whether the Petitioners have met this burden, the district court has a "duty . . . to

18   balance the interests of all parties and weigh the damage to each, . . . ." *L.A.*

19   *Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir.

20   1980).[7] The State "is in no way harmed by the issuance of an injunction that

21   prevents the state from enforcing unconstitutional restrictions." *Legend Night*

22   

23   [7] Even "'serious questions going to the merits' and a balance of hardships that
     tips sharply towards the plaintiff can support issuance of a preliminary
24   injunction, so long as the plaintiff also shows that there is a likelihood of
25   irreparable injury and that the injunction is in the public interest." *All. For The*
     *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The public interest
26   and the balance of the equities factors merge when the government stands as a
     party. See *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)
27   (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *Rosebud Sioux Tribe v.*
     *Trump*, 495 F. Supp.3d 968, 975 (D. Mont. 2020).
28

10

1   *Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011).

2      In the balance of equities, this Court can at least maintain the status quo

3   until trial.

4      **E. Preliminary Relief Advances the Public Interest.**

5      Courts apply a sliding scale approach to preliminary relief. *See*, *All. for the*

6   *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The reviewing

7   court must balance the elements "so that a stronger showing of one element may

8   offset a weaker showing of another." *Id.*

9      The Supreme Court held, in *Roman Catholic Diocese*, that "even in a

10  pandemic, the Constitution cannot be put away and forgotten [… and] it has not

11  been shown that granting the applications will harm the public." *Roman Catholic*

12  *Diocese of Brooklyn v. Cuomo*, 592 U.S. ____, 14 S.Ct. 63, 68 (2020)(per

13  curiam).

14     Ending Defendants' unconstitutional use of power is in the public interest.

15  Treating Federal Workers the same as the 630,000 Postal Service Employees is

16  in the public interest.

17     **F. This Court Should Issue An Order to Show Cause.**

18     Burden shifting is a recognized pre-trial function of district courts. *See,*

19  *e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973) (after

20  plaintiff makes a prima facie showing of discrimination, the burden shifts to the

21  defendant to show a lawful reason for defendant's conduct).

22     The seriousness of the allegations in the Complaint warrant an Order to

23  Defendants to show cause why a preliminary junction should not issue.  Barring

24  such an order, the federal government and its contractors will continue to punish

25  those simply seeking to exercise their constitutional rights, by terminating them,

26  forcing them to retire or resign, or putting them on unpaid leave, thereby denying

27  plaintiffs and their families of their livelihoods and their health and other

28  benefits.

Further, courts should not defer to retrospective contrived statements simply because some government official offers them, but, rather, courts must apply strict scrutiny to the basis provided at the time of the disparate treatment was conceived.

## **CONCLUSION**

Postal Service Employees are similarly situated with Federal Workers when it comes to the pandemic.  Plaintiffs respectfully request that this Court issue a temporary restraining order enjoining Defendants from enforcing the Federal employee and contractor vaccine mandates, and subsequent regulations and/or advisories. Plaintiffs further request an Order to Show Cause Why a Preliminary Injunction Should Not Issue against Defendants.

Dated this February 11, 2022

*/s/ Gary G. Kreep*
Gary G. Kreep
Attorney at Law
932 D Street, Suite 1
Ramona, CA 92065
Phone: 702-979-3565
gary@ggkmail.us

Attorney for Plaintiffs